New Odorless Sewerage Company v. Octavia Wisdom et al.

Decided October 25, 1902.

**1.—Disqualification of Judge.**

Where the action was for damages to land by pollution of a stream flowing through it, the district judge was not disqualified to try it because he owned an adjoining tract below, and through which the stream also flowed, since the statute disqualifies a district judge only where he is "interested in the cause." Rev. Stats., art. 1068.

**2.—Damages to Land—Sewers—Pollution of Water Course—Public Use.**

Where defendant, a private corporation, caused permanent damage to plaintiffs' land by emptying its sewers into a creek flowing through the land, plaintiff was entitled to recover for such damage, although science, skill and care were exercised in the construction of the sewers, and the stream was the natural drainage of the territory covered by the sewerage system. The constitutional provision forbidding the taking or damaging of private property for public use applies, since defendant's right could not rise higher than those of the city it served with its sewerage system. Const., art. 1, sec. 17.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*Edward P. Hill* and *Robt. E. Cofer,* for appellant.

*Davis & Garnett* and *Culp & Giddings,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This was an action for damages brought by appellees against appellant for polluting the waters of Elm Creek, which flows through appellees' land. Appellees own a farm of 66 acres, on which they reside, situated on Elm Creek below the city of Gainesville, Texas. Appellant is a corporation engaged in operating a system of sewerage in said city. It owns a sewerage farm on the banks of Elm Creek of about 30 acres, about three-fourths of a mile above appellees' premises. It also owns a system of pipes laid in the principal streets of Gainesville, and these pipes connect with public and private houses and receive all the sewerage matter from said houses, and through these pipes the sewerage matter of a large portion of said city is conducted to a large receptacle built on the said sewerage farm.

Appellees allege in their petition that the said sewerage matter is dumped by appellant into Elm Creek and through said creek said sewerage matter reaches their premises; that the waters of said creek have been contaminated and a permanent injury done to their said farm; and they sue for damages for such permanent injury. The petition does not charge appellant with negligence, nor improper construction of its sewerage plant and works, nor with draining any territory not naturally draining into Elm Creek, but treats appellees' rights as depending purely and simply upon the alleged pollution of the waters of Elm Creek.

Appellant answers by general and special demurrers, by general denial, plea of not guilty, and by special answer. The special answer sets up that appellant has a franchise from the city of Gainesville; that its system of sewerage was built under said franchise at great expense; that appellant used all reasonable care in the construction of its works, which are constructed according to the best known plan, and that appellant is guilty of no negligence; that the sewerage farm is so constructed and arranged that it controls the sewerage matter in appellant's pipes, and none of such matter falls into Elm Creek; that Elm Creek is the only natural drainage way for Gainesville, and no territory, not naturally tributary to Elm Creek, drains into appellant's sewers.

A judgment was rendered on the verdict of a jury for $750, and on appeal we are asked to revise that judgment.

The record discloses the following facts in substance: The appellee Octavia Wisdom was the owner of a 66-acre farm through a portion of which Elm Creek flowed. The land was worth from $60 to $70 per acre before the sewers were built. The appellant was incorporated under the laws of Texas in 1898, and had a franchise from and contract with the city of Gainesville (which has a population of some 12,000 people) to drain the city of its sewerage for fifty years from 1898. It

does so by means of salt vitrified pipes cemented together under the streets and alleys of the city, connected with the houses, and through which the sewage is conveyed to a 30-acre tract of land owned by appellant on the bank of Elm Creek about three-fourths of a mile above appellees' farm and home, and about a mile and a half below the city of Gainesville, and there deposited in a receptacle dug in the earth, 100 feet long, 12 feet wide, and 12 feet deep, covered over with heavy timbers and earth. From this receptacle a system of loose-jointed perforated pipes extends into the field about three feet from the surface and conveys the overflow water from the cesspool out into the earth, where it is supposed to be filtered and thence carried to the creek through another system of perforated pipes. The solid matter from the sewers remains in the large receptacle, where, as the evidence tends to show, it is consumed by certain bacteria which, the president of the sewerage company says, is propagated by the billions and used for that purpose. The solid matter, he says, never escapes from the receptacle, because the pipes are all screened to prevent it. The evidence of the appellant, in short, was sufficient to establish that the system of sewerage in use by it, not only at Gainesville but at many other cities and towns in Texas, is the result of many years of study and experience, and is as good as can be built in the light of present scientific knowledge on the subject. It seems that the sewerage company did all in its knowledge and power to make it a perfect success and avoid injury to others. On the other hand, the evidence is amply sufficient to prove that the water of Elm Creek was contaminated, polluted, and befouled by the drainage from the sewers to such an extent, at times and often, as to render it unfit for domestic use and very offensive to the smell, even for a quarter of a mile from the creek, and that by reason thereof the appellees' land was depreciated in value and damaged as much as $750.

Elm Creek flows through a tract of 471 acres of land owned, at the time of the trial, by the honorable district judge who tried this case,—said tract lying adjoining appellees' tract just below it,—and objection was made at the trial that his honor was therefore interested in the cause, and consequently disqualified to try it. This objection was overruled by the court, and we think properly, because our law provides that the district judge must be "interested in the cause," etc., in order to disqualify him (Revised Statutes, article 1068), not "interested in the question to be determined," as would disqualify the judges of the Supreme Court and Courts of Civil Appeals. Id., arts. 969, 1021.

The main question in this case is raised on the charge given by the court and those requested by appellant and refused. The court's charge was as follows: "If you believe from the evidence that by permitting the contents of its sewers to enter into Elm Creek the defendant has caused the waters in said creek to become more polluted or impure than it would have been had the defendant's sewer system not been constructed and operated, and if by reason thereof plaintiffs' land has been

permanently damaged, and if on account thereof its market value has been diminished, then you will find for plaintiff and assess her damages at the difference between the present market value of said land, if any, and what its present market value would be if said sewerage system had not been constructed and operated; but unless you do so find and believe, you will find for defendant."

The requested charges were as follows: "If you believe from the evidence that defendant's sewerage system was skillfully planned and skillfully and carefully built according to the best known methods of planning and constructing and building such a work, and if you believe from the evidence that defendant has exercised ordinary skill and ordinary care and reasonable diligence and caution to prevent the outfall from its said sewerage system from polluting the waters of Elm Creek, and if you believe that said defendant is free from negligence in the construction and maintenance of such sewerage system, and if you further believe from the evidence that the territory drained into Elm Creek is naturally tributary and naturally drains in said creek, and that said creek is the natural drainage way for the city of Gainesville, and that there is no other way of reasonably disposing of the sewerage of the said city of Gainesville except that now pursued by defendant, then you are instructed to find for the defendant, even though you should believe from the evidence that the waters of Elm Creek are polluted and not as pure as they would be without said sewerage system draining into said creek.

"You are instructed that defendant has the right to the use of the waters of Elm Creek, and if under the circumstances surrounding the use of said creek by defendant and in the careful exercise of its business in disposing of the sewerage of the city of Gainesville, the waters of said creek are polluted, yet if said waters are not unreasonably or unnecessarily polluted, then you will find for the defendant."

We think the court's charge was correct, and those asked and refused were incorrect. Our Constitution provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money." Const. 1875, art. 1, sec. 17.

If the sewerage system had been constructed by the city itself, and not by a private corporation, the right of appellee to recover from the city whatever amount of damages she sustained by reason of polluting the waters of Elm Creek would be the same, whether the damage was little or much. And, whatever the necessities of the city might be to preserve the health of its population, this section of our Constitution stands as a guaranty to the citizen that his property shall not be damaged for the public good without paying to him adequate compensation therefor. There can be no question of due care and skill in conducting

the works. If filth is gathered together and poured into a stream either directly or indirectly, if it pollute the waters of that stream so that the lands of the riparian owners are diminished in value, the person or corporation who causes the damage must pay it; not even the State is exempt from liability; the only exception in its favor is that it shall not be required to pay the damages in advance, or deposit money to cover them, as every person or corporation, municipal or otherwise, would have to do. The rights of the public are no higher than the rights of a single individual, except that the individual's property may be taken, destroyed, or damaged for the use of the public, but not until adequate compensation is paid him. So, it was only a question in this case of whether the property was diminished in value, and this was a question for the jury. The learned judge who presided at the trial submitted this single issue fully and fairly to the jury, and amid the conflicting testimony they have found that it was, and we find no error in the proceedings requiring us to set aside that verdict or reverse the judgment rendered thereon.

The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.